Good morning, Counsel. Good morning, Your Honors. Please proceed when you're ready. May it please the Court, Keohtani for Appellant Salcedo. I would like to reserve one minute for argument. For rebuttal, you mean? I'm sorry. For rebuttal, thank you. Your Honors, the State presented Allen as a gang member before the Salcedo trial. The State presented Allen as a non-gang member during the Salcedo trial. And the State presented Allen again as a gang member after the Salcedo trial. In this case, there was only Allen's testimony linking Salcedo to this offense. There was no physical evidence. There were no other witnesses. There was only one thing that linked Salcedo to this offense. And that was the testimony of Allen. And it was important that the State suppressed his gang membership, suppressed the cash payments. And I'm sorry, I don't mean to interrupt you. We know that it's important because as noted in Kiles and Shilton, we can look at the closing arguments of the prosecutor and look at how they argued. And what they argued was that Allen was a community hero, that he was someone who stood up to gangs. He was a Little League football coach. And because of his standing up to gang members, he lost his home. He was never able to go back to that Little League football team. He couldn't go back to his neighborhood. Counsel, may I ask you, did I understand you correctly to say that the government first presented Allen as a non-gang member and then presented him as a gang member? No, Your Honor. They first presented Allen as a gang member before the Salcedo trial. Okay. Well, my concern is that you're saying that false testimony was presented at trial. So you're not saying that the dichotomy was during trial, but the testimony was inconsistent with something that had been done previously? Yes, Your Honor. What I'm trying to point out is that the state, before the Salcedo trial, presented Allen as a gang member. In what fashion? In a document? Are you referring to a document that identified him as a gang member? Yes, Your Honor. And also, first off, they presented him as a gang member in a police report in which he was presented as a documented known gang member. And they also used that same gang membership to violate Jerry Salcedo, which is Salcedo's son, parole because Jerry Salcedo was violated for associating with gang member Allen. This occurred before the Salcedo trial. So before the Salcedo trial, the state had already used Allen's gang membership to put someone into prison for 12 months. They used it to put Jerry into prison for 12 months. Then, during the Salcedo trial, they presented him as a disinterested civilian witness as opposed to someone who was a gang member who was connected with that world. And then after the Salcedo trial, in the other son, Larry's prelim, Allen was forced to admit that he himself had claimed gang membership. I believe he said it on multiple occasions. And not only did the state present Allen as a non-gang member during the Salcedo trial, but Allen himself said he wasn't a gang member, and he also said that he had never presented himself as a gang member. So, counsel, precisely what is the false testimony that you're relying upon for your argument? The principal testimony is Allen's testimony that he was not a gang member, Allen's testimony further that he had never claimed that he had never said he was a gang member, and the testimony of Detective Ponce de Leon that Allen was not a gang member. And also there enters into it that Detective Nava said that she had never given cash to Mr. Allen when, in fact, she had given cash in the amount of, I believe, around $4,700 to Mr. Allen. And when all of these are taken together, these constitute a Nipua violation. And as the Supreme Court recently said in Wherry v. Kane, even if the jury could have convicted, if there's no confidence that the jury would have convicted, then that's a Nipua violation, and this Court should reverse. At the trial, the defense put on a Mr. Meza, M-E-Z-A, and he testified in great detail, contrary to Mr. Allen's claim that he was not a gang member, that Allen was a gang member and had been a gang member and used gang signs. So my question to you is, how is the testimony of Allen and Ponce de Leon, which is inconsistent with Meza, why is that material under NAPU? Thank you, Your Honor. There are two things that I think show that it's still very material. The first is that while Meza testified that Allen was a gang member, Meza also testified that he was a convicted felon, that he was just waiting to self-surrender, that he was just dragged in from the hallways of the court. I mean, he might not have testified to that. That might give him some credibility. Thank you, Your Honor. But when you compare the testimony of someone who's an admitted convicted felon who's just waiting to self-surrender to the testimony of especially Detective Ponce de Leon, who was able to testify that he was a gang officer for many years, that he had been in that gang unit. Didn't Captain Cortinez testify that Allen was not a gang member? No. I'm sorry. Detective Cortinez testified in Larry's prelim, and he testified. That was after the trial. Which was after the trial. Why wasn't he available at the trial to be called by you? Your Honor, that is one of the things that we are asking for in the alternative, is if the court has questions about— No, no. My question is, why didn't you call Cortinez to contradict Ponce de Leon? Your Honor, I do not know if Cortinez was available for service. I don't know— Was there any evidence that with due diligence, Cortinez would not have been producible? Your Honor, in a NEPUA analysis, due diligence is not relevant because the only thing that matters is the— we look at the prosecutor only. On the Brady analysis, due diligence is not required. And those questions, we were unable to answer at the trial level because the state court denied us evidentiary hearings, just as the federal court denied us evidentiary hearings. If this court believes that there are sufficient issues that need to be developed, one of the things we are asking for in the alternative is for remand, discovery, and evidentiary hearing. We— But on habeas, aren't we supposed to decide the case in accordance with the record developed by the state court? Isn't that what the Supreme Court has told us? Yes, Your Honor, but as the court noted in Brumfield and Taylor v. Maddox and Nunez v. Miller, where the state court has not followed its own procedures or has made decisions which, if it had followed its own procedures under D-2 or D-1, then the court is free to go to an evidentiary hearing, and also it goes to de novo review. Let me ask you this question. We'll give you a minute for rebuttal. What procedure is it that you are asserting the California courts did not follow? The California courts have a procedure that we assume under a Brumfield analysis is adequate, and that is that you have to state a prima facie case. And for that case, the state court assumes that everything you put in your petition that is substantiated is true. And in this case, the state court briefs were briefed by an attorney. They were completely side to the record. They were substantiated. Those arguments should have been taken at prima facie face value. And because they were not, then under Brumfield, that's either an unreasonable determination of facts. Under Taylor v. Maddox, it's an unreasonable determination of facts. That's both under D-2. And even under Nunez, under D-1, it's an unreasonable application of Federal law because, again, they didn't follow their own procedures. Thank you. Thank you, counsel. We'll hear from the State. May it please the Court. Jonathan Klein, Deputy Attorney General for Respondent. The question of whether Victor Allen was a gang member, which is the issue underpinning petitioners Napui, Brady, and ineffective assistance of counsel claims, was just not that important in this case. Therefore, evidence relating to Victor Allen's gang membership was not material. For that reason and for several other reasons, the district court correctly concluded that the California Court of Appeal did not unreasonably apply clearly established Federal law when it rejected petitioners' claims. What is your response to opposing counsel's position that materiality is not an element when you're doing a Napui claim, only the prosecution's conduct? What's your response to that? Well, materiality is definitely one of the elements of a Napui claim. There are three elements. One, the evidence has to be actually false. Two, the prosecution has to know or should have known that the evidence was actually false. And three, it has to be material. Do you concede the first two elements? No, I do not. With respect to the first element, the California Court of Appeal could have reasonably concluded that the testimony that Allen was not a gang member was not actually false. Allen did testify at petitioner's trial that he was not a gang member, and we do have Detective Cortinez's testimony at Larry's preliminary hearing that Allen was a gang member. But those amount to nothing more than inconsistent statements, and inconsistent statements do not rise to the level of actual falsity under Napui. What's your strongest case for the proposition that inconsistent statements do not rise to the level of a false statement under Napui? You know, I know I cited some in my brief. What's your strongest case for that proposition? Can you give me one moment, Your Honor? Sure.  Well, I would cite to, there's a United States, the Zuno-Ars, that says discrepancies in testimony could as easily flow from errors in recollection as from lies. There's also United States v. Croft that says that the fact a witness may have made an earlier inconsistent statement or that other witnesses have conflicting recollections of events do not establish that the testimony offered at trial was false. That's United States v. Croft. And I would submit that that is the strongest case, substantiating that point. But I think even more importantly, and this whole analysis can be short-circuited, is if we go to materiality, and here the evidence, or the California Court of Appeal, could have reasonably concluded that Allen's gang membership was just not material in that case. Petitioner, throughout his briefing, has tried to come up with a rationale as to why it's material, but his arguments are not that persuasive. He first claims that the prosecution used a community hero narrative and that evidence that Victor Allen was a gang member would have spoiled that narrative, but that's not necessarily the case. It would be just as compelling to say that Victor Allen heroically came forth and named a member of his own gang as Martinez's killer at great personal risk to himself. There was evidence that he knew what could happen to snitches and gangs, so that would have been a powerful argument. Wasn't Allen the only eyeball witness to the knifing? Yes, to his own knifing. Right. What other evidence was there that Salcedo's son killed the victim? That killed Martinez? There are two separate instances here. First, there was the murder of Martinez, and that was witnessed by, I think, the evidence said about six other people, many of whom were Orange Street Locos gang members. Did they testify at the trial? Well, that would have been the crime that Larry Salcedo committed, and there's no evidence in the record as to who testified in that case. But with respect to the prosecutor's argument here, it was not a big part of the prosecution's case that Victor Allen was not a gang member. It was barely a part of the case at all. And, in fact, in the prosecutor's rebuttal argument, after defense counsel had argued that Victor Allen was a gang member, the first thing the prosecutor said in his rebuttal argument was, you know, maybe Victor Allen is a bad guy, maybe he is a gang member, but it doesn't matter. What matters is he was a witness to Petitioner's son killing Martinez. That's what matters. So the prosecutor himself disavowed any notion that Victor Allen's gang membership or lack thereof was important in this case. And even more fundamentally, this case is unusual in that Allen's gang membership was not indicative of any prototypical form of bias that we often see in gang cases. If I understand Petitioner's argument correctly, it's that Allen's true assailant was an Orange Street Locos gang member, and that Allen needed to protect his gang by naming a non-gang member, i.e. Petitioner, as his killer or as his attacker. But there are numerous problems with that theory of materiality. The first is that there is no evidence in the record that the true assailant of Victor Allen was an Orange Street Locos gang member. But moreover, it wouldn't make sense for Victor Allen to name Petitioner as if he was trying to protect the gang. Why would he name the completely innocent father of at least two of the gang's members as his attacker if he was trying to protect the gang? Common sense would indicate that doing something like that would only make the gang more angry at him. And as has been mentioned, this was not a case where there was no evidence of Victor Allen's gang membership that was put forth. There was Christopher Mesa who testified emphatically and unequivocally that Victor Allen was a gang member. So the jury was not denied any knowledge that Victor Allen could have been a gang member. Counsel, may I ask you what case are you relying upon for your elements of the NAPU claim? Because they're not set forth in NAPU itself. So where are you – where is the origin of those elements? What case? Give me one second, Your Honor. I apologize. I'm getting there very quickly. Okay. The elements – the case that I cited is United States v. Renzi, which was an opinion from this court, and it's at 769 F. 3rd, 731. And I'm quoting. It says, a defendant must show, one, that the testimony was actually false, two, that the government knew or should have known that it was false, and three, that the testimony was material, unquote. And I think it is fairly clearly established that those are the elements of a NAPUI claim. Moving on to Petitioner's Brady claim, there's no evidence that the evidence relating to Allen's gang membership was not disclosed. There was no declaration from Petitioner's trial counsel or the prosecutor stating what was disclosed and what was not disclosed. The only evidence in the record is that there was discovery given to defense counsel, and the defense counsel ultimately lost the file. You know, speculation that evidence was not provided is insufficient to establish nondisclosure. And for the same reasons that the gang membership evidence was not material in the NAPUI and Brady contexts, it was also not prejudicial in the Strickland context. What about the instruction by the judge that the but-for test for prejudice under Strickland was the correct test rather than what is really the correct test, reasonable probability? Yes, Your Honor, that was with respect to the ineffective assistance of counsel claim. I think the court of appeal, though, was just using shorthand to describe the Strickland standard. They cited to the Strickland case the pages that use the word reasonable probability, and the court of appeal also cited to a California case that also uses the reasonable probability language. So when we're deciding a case under the AEDPA, I think we have to give the state court the benefit of the doubt that it does know the applicable standards, and so deference under the AEDPA is appropriate here. And for those reasons, a respondent would respectfully ask that this court affirm the district court's judgment denying the second amended petition. Thank you. Thank you, counsel. Rebuttal. Thank you, Your Honors. I would like to just clarify that I didn't mean to say that materiality was not necessary in an APUA claim. The question was due diligence, and I was saying due diligence is not necessary. I thought you said materiality. If I did so, Your Honor, that was a mistake on my part. I was talking about due diligence. Okay. So if we agree with the state that the information thought was not material, you lose, correct? Yes, Your Honor. Okay. But as Judge Bea said, they gave – I'm sorry. He did not say that. But the jury was given the instruction that someone who is false in one part of their testimony should be mistrusted in all others. Maybe. Maybe. Maybe. Thank you, Your Honor. And also, the narrative allowed the prosecutor to spend one sentence, whereas in his closing arguments, he spent eight paragraphs, and that's in the opening brief, pages 15-16. I don't want to do that now. But eight paragraphs describing him as a community hero. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Fernandez, Rawlinson, Bea